Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 21, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN EDWARD MCGINNIS,

Defendant.

Case No.   2:20-CR-91-RMP-1
           2:10-CR-20-RMP-2

Rule 11(c)(1)(C)
Plea Agreement

Plaintiff, United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, Richard R. Barker, Assistant United States Attorney for the Eastern District of Washington, and Defendant John Edward McGinnis, as well as Defendant's counsel, Andrea George and Houston Goddard, agree to the following Plea Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C):

1)   <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant, JOHN EDWARD MCGINNIS, (hereinafter Defendant) agrees to plead guilty to Count 1, Count 4 and Counts 9–10 of the Superseding Indictment dated January 5, 2021, charging Defendant as follows:

**Count 1**: Assault with a Dangerous Weapon in Indian Country in violation of 18 U.S.C. §§ 113(a)(3), 1153. Defendant understands that this is a Class C Felony, carrying a maximum penalty of 10 years and/or a $250,000 fine; 3 years supervised release; and a $100 special penalty assessment.

*United States v. John Edward McGinnis* - Plea Agreement - 1

**Count 4**: Arson in Indian Country, in violation of 18 U.S.C. §§ 81, 1153. Defendant understands that this a Class A Felony, carrying a maximum penalty of not more than life and/or a $250,000 fine; 5 years supervised release; and a $100 special penalty assessment.

**Count 9**: Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(2), 924(a). Defendant understands that this a Class C Felony, carrying a maximum penalty of 10 years; and/or a $250,000 fine; 5 years supervised release; and a $100 special penalty assessment.

**Count 10**: Discharging and Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). Defendant understands that this is a Class A Felony, carrying a maximum penalty of not less than 10 years nor more than life and/or $250,000 fine; 5 years supervised release; and a $100 special penalty assessment. Defendant further understands that any punishment under this provision must be consecutive to any punishment imposed for the underlying crime of violence.

Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for up to five years without credit for time previously served on post-release supervision. *See* 18 U.S.C. § 3583(e)(3).

2) <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter. Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

Defendant also understands that this is a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that the United States may withdraw from this Plea

*United States v. John Edward McGinnis* - Plea Agreement - 2

Agreement if the Court imposes a lesser sentence than agreed upon. Defendant further understands that Defendant will have the option to withdraw from this Plea Agreement if the Court imposes a sentence harsher than agreed upon.

3)   Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a)   The right to a jury trial;

    b)   The right to see, hear, and question the witnesses;

    c)   The right to remain silent at trial;

    d)   The right to testify at trial; and

    e)   The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4)   Elements of the Offense:

The United States and Defendant agree that in order to convict Defendant of Count 1, Count 4 and Counts 9–10 of the Superseding Indictment, the United States would have to prove beyond a reasonable doubt the following elements:

**Count 1**: Assault with a Dangerous Weapon in Indian Country in violation of 18 U.S.C. §§ 113(a)(3), 1153.

*First*, on or about June 1, 2020 in the Eastern District of Washington, Defendant assaulted L.C. by intentionally using a display of force that reasonably caused her to fear immediate bodily harm;

*Second*, Defendant acted with the intent to do bodily harm to L.C.;

*Third*, Defendant used a dangerous weapon, that is a firearm;

*Fourth*, the offense was committed within the external boundaries of the Colville Reservation, in Indian Country;

*Fifth*, Defendant is a member of the Confederated Tribes of the Colville Reservation; and

*Six*, the Confederated Tribes of the Colville Reservation is a federally recognized tribe.

*See* Ninth Circuit Model Jury Instruction 8.7 (Assault with a Dangerous Weapon)

**Count 4**:  Arson in Indian Country, in violation of 18 U.S.C. §§ 81, 1153

*First*, on or about June 1, 2020 in the Eastern District of Washington, Defendant, intentionally set fire to trailer, namely a dwelling located at Land Area 101 Tract Number 242 on Owhi Loop Road, Nespelem, Washington;

*Second*, the dwelling located at Land Area 101 Tract Number 242 on Owhi Loop Road, Nespelem, Washington was within the external boundaries of the Colville Reservation, in Indian Country;

*Third*, Defendant acted wrongfully and without justification;

*Fourth*, Defendant is an Indian and an enrolled member of the Confederated Tribes of the Colville Reservation; and

*Fifth*, the Confederated Tribes of the Colville Reservation is a federally recognized tribe.

*See* Ninth Circuit Model Jury Instruction 8.1 (Arson or Attempted Arson)

**Count 9**:  Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(2), 924(a)

*First*, beginning on or about June 1, 2020 and continuing until on or about June 2, in the Eastern District of Washington, Defendant knowingly possessed a Harrington & Richards, model 926, .22 caliber revolver, bearing serial number AR 13691 and approximately 10 rounds of .22 caliber ammunition of various manufacturers including, Remington, Federal, and CCI (Speer/Blazer);

*Second*, the firearm and ammunition were transported in interstate commerce; and

*Third*, at the time Defendant possessed the firearm and ammunition, he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year, which prohibited him from possessing a firearm.

*See* Ninth Circuit Model Jury Instruction 8.65 (Unlawful Possession)

**Count 10**: Discharging and Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c).

*First*, Defendant committed the crime of Assault with a Dangerous Weapon in Indian Country as charged in Count 1 of the Superseding Indictment, which is a crime of violence; and

*Second*, Defendant knowingly used, carried, brandished, and discharged a Harrington & Richards, model 926, .22 caliber revolver, bearing serial number AR 13691 during and in relation to that crime.

*See* Ninth Circuit Model Jury Instruction 8.71 (Firearms—Using or Carrying in Commission of Crime of Violence).

5) Factual Basis and Statement of Facts:

The United States and Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

On June 1, 2020, at approximately 9:30 p.m., Colville Tribal Police received a call regarding a trailer fire near HUD 4005 Mushroom Corner, Nespelem, which is within the external boundaries of the Colville Reservation. Shortly after the initial call, L.C. made contact with law enforcement at Coulee Medical Center, reporting that she and her two grandchildren, Minor 1 (age 13) and Minor 2 (age 9) were assaulted

*United States v. John Edward McGinnis* - Plea Agreement - 5

at gunpoint by Defendant and taken from L.C.'s residence in Nespelem, which is also located within the external boundaries of the Colville Reservation.

L.C. explained to law enforcement that Defendant was in her home that evening and was acting strangely. According to L.C., Defendant was upset with L.C.'s sister and began accusing Minor 1 of being a "snitch." Defendant took Minor 1's cell phone out of Minor 1's hands and shattered the phone. At one point, Defendant went into L.C.'s room, demanded keys to L.C.'s car, and he punched a hole in the wall. After L.C. refused to give Defendant the keys, he began yelling, pulled out a gun, and demanded that the children take the gun and kill him (Defendant). When the children refused to shoot Defendant, he began firing the revolver, which Minor 1 identified as possibly a .22 caliber. Specifically, Defendant fired the gun at the walls, ceiling, a candle, and at an air conditioner, while in close proximity to L.C. and the minor children, reasonably causing them to fear immediate bodily harm.

Defendant then caused L.C. and the two minor children to get into L.C.'s black Toyota Tacoma pickup truck. Defendant directed L.C. to drive the group to a trailer parked on Owhi Lake Loop Road, which is where Defendant apparently was staying at the time. Once inside, the dwelling at Land Area 101 Tract Number 242, Defendant wrongfully and without justification set the trailer on fire, using a lighter to set fire to the curtains. Defendant then ordered L.C. to drive in the direction of Coulee Dam. During the drive, Defendant waived the gun around, firing it several times. After he ran out of ammunition, Defendant continued trying to fire (L.C. described what sounded like clicking sounds). Throughout the incident, Defendant made threats, yelling at his victims to "shut up."

At some point that evening, L.C. convinced Defendant to let them go to Coulee Medical Center, purportedly to use the restroom, where she and the children were able to get out of the truck. When they got out, Defendant stole the truck, driving off without L.C. and the minor children. Defendant then drove the stolen Toyota Tacoma to an apartment where Minor 3 was staying in Grand Coulee, arriving at

*United States v. John Edward McGinnis* - Plea Agreement - 6

approximately 10:00 p.m. Defendant, still armed with the .22, broke down the door leading into Minor 3's apartment.

Defendant went through the broken door. Not long after, Defendant returned to the stolen truck and proceeded to drive Minor 3 from Grand Coulee to a 7-Eleven in Spokane. Surveillance video from the 7-Eleven shows L.C.'s Toyota Tacoma, which Defendant was driving, pull into the 7-Eleven at approximately 1:42 a.m. Defendant pulled the truck to the fuel pump farthest away from the store and sent Minor 3 inside to pay for gas, while Defendant waited outside to put gas in the truck. When Minor 3 did not return a few minutes later, Defendant drove off. Meanwhile Minor 3 ran into the public restroom inside the 7-Eleven, after having directed the store clerk to call 911. Minor 3 locked herself inside the restroom and waited for police to arrive.

At approximately 1:50 a.m., as Spokane Police were responding to Minor 3's call from the 7-Eleven, Spokane Police Department Officers Richmond and Valencia, who were in a marked patrol vehicle, received information from dispatch that the stolen Toyota Tacoma was last seen driving the wrong way down E. 2nd Avenue, in the area of Cowley Street in Spokane, Washington. Moments later, Officers Richmond and Valencia saw a black Tacoma traveling southbound on East 10th Avenue. Around this time, dispatch advised that the black Tacoma was involved in a suspected kidnapping in Grand Coulee. Officers Richmond and Valencia confirmed that the Tacoma they were following had stickers and markings consistent with those described by Grand Coulee Police.

Officer Richmond illuminated his lights and sirens, and Defendant, who refused to stop, took off – driving approximately 45 – 50 mph in a residential area. Defendant also failed to bring the vehicle to a stop at a stop sign, and then he squeezed the truck between two boulders. The stolen Tacoma was now traveling off road onto a cement walking trail, in the area of Liberty Park. Eventually, Defendant drove the truck down some switchbacks toward the park, but the vehicle became high centered when Defendant attempted to drive over uneven terrain. Defendant was ordered to get out

of the vehicle, and ultimately complied with Spokane Police directives to give himself up. At the time of his arrest, Spokane Police described a strong smell of alcohol coming from the vehicle.

During a subsequent search of the Tacoma, police recovered a silver Harrington & Richards .22 caliber revolver, model 926, bearing serial number AR 13691. The revolver, which contained several empty cartridge casings, was recovered from the driver's side door and appeared to match the description of Minor 3, as well as that of L.C. and the other minor children. The revolver located was, in fact, the same firearm Defendant had fired in the presence of L.C. and the other minor children. Subsequent testing identified Defendant's DNA on the revolver. At the time that the revolver was in Defendant's possession, he had a prior federal felony conviction, for which he was imprisoned for over a year, for Assault with a Dangerous Weapon in Case No. 2:10-CR-20-RMP-2. The Harrington & Richards, model 926, .22 caliber revolver, bearing serial number AR 13691 and 10 rounds of .22 caliber ammunition of various manufacturers including, Remington, Federal, and CCI (Speer/Blazer) were manufactured outside the state of Washington and, therefore, had previously moved in interstate commerce.

Defendant is an Indian and an enrolled member of the Confederated Tribes of the Colville Reservation and was a member on June 1, 2020. The Confederated Tribes of the Colville Reservation is a federally recognized tribe.

6)    <u>The United States Agrees</u>:

The United States Attorney's Office for the Eastern District of Washington agrees to dismiss Counts 2 – 3 and Counts 5 – 8 of the Superseding Indictment and agrees not to bring any additional charges against Defendant based upon information in the United States' possession at the time of this Plea Agreement, unless Defendant breaches this Plea Agreement any time before or after sentencing.

7) <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G.") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing. The parties also are free at sentencing to argue for or against any additional upward or downward adjustments identified by with Presentence Investigation Report writer.

a) <u>Offense Characteristics</u>:

(1) <u>Count 1: Assault with a Dangerous Weapon in Indian Country</u>

The United States and Defendant agree that the base offense level for Assault with a Dangerous Weapon in Indian Country in violation of 18 U.S.C. §§ 113(a)(3), 1153, is 14. *See* U.S.S.G. § 2A2.2(a).

The United States and Defendant agree a firearm was discharged, resulting in an upward adjustment of 5 levels. *See* U.S.S.G. § 2A2.2(b)(2)(A). The United States also reserves the right to argue that the victim was physically restrained resulting in an upward adjustment of 2 levels pursuant to U.S.S.G. § 3A1.3.

(2) <u>Count 4: Arson in Indian Country</u>

The United States and Defendant agree that the base offense level for Arson in Indian Country in violation of 18 U.S.C. §§ 113(a)(3), 1153, is 24. *See* U.S.S.G. § 2K1.4(a)(1).

The United States reserves the right to argue that the victims were physically restrained at the time of the offense, resulting in an upward adjustment of 2 levels pursuant to U.S.S.G. § 3A1.3. The United States also reserves the right to argue that Defendant knew or should have known that the victims of this offense were vulnerable victims, resulting in an upward adjustment of 2 levels. *See* 3A1.1(b)(1).

(3) <u>Count 9: Felon in Possession of a Firearm and Ammunition</u>

a. *Base Offense Level*:

The United States and Defendant agree that the base offense level for Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(2),

924(a), is 20. *See* U.S.S.G. § 2K2.1(a)(4). The United States reserves the right to argue that Defendant possessed the firearm in connection with another felony offense, resulting in an upward adjustment of 4 levels. *See* U.S.S.G. § 2K2.1(b)(6).

      b. *Potential Cross-Reference*:

  The parties also note that §2K2.1(c) contains a cross reference denoting that "if the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense" then § 2X1.1 applies. Section 2X1.1(a), in turn, points to "the guideline for the substantive offense, plus any adjustments from such guideline for any offense conduct that can be established with reasonable certainty."

  Relying on §§ 2K2.1(c) and 2X1.1(a), the United States intends to argue at sentencing that Defendant unlawfully possessed the firearm in connection with the commission or attempted commission of another offense, that is, kidnapping. If the kidnapping guideline is deemed to apply based on this cross reference, Defendant's base offense level for Count 9 is 32. *See* U.S.S.G. § 2A4.1(a). The following specific-offense adjustments may also apply: a 2-level upward adjustment for using a dangerous weapon and a 2-level upward adjustment because Defendant knew or should have known the victims of this offense were vulnerable victims. *See* U.S.S.G. §§ 2A4.1(b)(3), 3A1.1(b)(1). The United States also reserves the right to argue for additional enhancements pursuant § 2A4.1 cross-reference at sentencing.

    (4) Count 10: Discharging a Firearm During a Crime of Violence

  Pursuant to §2K2.4(b), the guideline sentence for Discharging and Using a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), is the minimum term of imprisonment required by the statute, which in this case is 120 months. *See* 18 U.S.C. § 924(c). Under § 924(c) and the Guidelines, any

*United States v. John Edward McGinnis* - Plea Agreement - 10

sentence imposed pursuant to 2K2.4(b) must be consecutive to any other term of imprisonment imposed in this case. *See* 2K2.4(b), n. 2(A).[1]

b) <u>Acceptance of Responsibility</u>:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; the United States will move for a three (3) level downward adjustment in the offense level for Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, not recommend a downward reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

c) <u>Multiple Count Analysis</u>

The United States and Defendant have made no agreement and make no representations as to application of U.S.S.G. §§ 3D1.1 – 3D1.4 (Procedure for

---

[1] U.S.S.G. §2K2.4 Application Note 4 provides, "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct)." In light of this Application Note, certain specific offense characteristics in Counts 1-3 and 9 for brandishing, using, or discharging a firearm may not apply in calculating Defendant's final total adjusted offense level.

*United States v. John Edward McGinnis* - Plea Agreement - 11

Determining Offense Level on Multiple Counts). Application of these provisions shall be determined after the Presentence Investigative Report is completed.

d) Criminal History:

The United States and Defendant understand that Defendant's criminal history computation is tentative and that ultimately Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

8) Departures/Variances

The parties reserve any arguments for an upward or downward departure or variance from the applicable sentencing guideline range until the time of sentencing.

9) Incarceration:

The parties agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between 240 and 300 months of imprisonment is the appropriate disposition of the case. The parties agree, pursuant to Rule 11(c)(1)(C), to recommend this sentence as a total sentence for the Defendant's sentence in 2:20-CR-91-RMP as well as any sentence for Defendant's violation of his supervised release in Case No. 2:10-CR-20-RMP-2, which the advisory guidelines recommend should run consecutively with his sentence in 2:20-CR-91-RMP.

10) Criminal Fine:

The parties agree to recommend the Court impose no criminal fine.

11) Supervised Release:

The United States and Defendant agree to recommend a five-year term of supervised release to include any special conditions as determined by probation.

*United States v. John Edward McGinnis* - Plea Agreement - 12

12) <u>Restitution</u>:

The parties agree restitution is required. *See* 18 U.S.C. §§ 3663A, and 3664. Further, pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay the agreed upon restitution amount for all losses to L.C., Minor 1, Minor 2, and Minor 3.

(a) Restitution Amount and Interest

The parties hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663A and 3664, the Court should order restitution in an amount to be determined at or before sentencing. The interest on this restitution amount, if any, should be waived.

(b) Payments

To the extent restitution is ordered, the parties agree the Court will set a restitution payment schedule based on his financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of his net monthly income towards his restitution obligation.

(c) Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. See 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

(d) Notifications and Waivers

Defendant agrees to notify the Court and the United States of any material change in his economic circumstances (e.g., inheritances, monetary gifts, changed

employment, or income increases) that might affect his ability to pay restitution. *See* 18 U.S.C. § 3664(k). This obligation ceases when the restitution is paid-in-full.

Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. § 3612(b)(1)(F). This obligation ceases when the restitution is paid-in-full.

Defendant acknowledges that the Court's decision regarding restitution is not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis to withdraw his guilty pleas or to withdraw from this Plea Agreement.

13) <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $400 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington.

14) <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15) <u>Appeal Rights</u>:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction, the revocation of his supervised release (in 2:10-CR-20-RMP-2), and the sentence the Court imposes, including any restitution order under $5,000. Defendant retains his right to appeal a restitution order in excess of $5,000. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

16) <u>Integration Clause</u>:

United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Joseph H. Harrington
Acting United States Attorney

_____   4/20/2021
Richard R. Barker                                         Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____   4-19-21
JOHN EDWARD MCGINNIS                          Date

*United States v. John Edward McGinnis* - Plea Agreement - 15

1     I have read the Plea Agreement and have discussed the contents of the
2 agreement with my client. The Plea Agreement accurately and completely sets forth
3 the entirety of the agreement between the parties. I concur in my client's decision to
4 plead guilty as set forth in the Plea Agreement. There is no legal reason why the
5 Court should not accept Defendant's plea of guilty.

_____      4/19/21_____

Andrea George and Houston Goddard    Date
Attorneys for Defendant